UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**MARLO ONDREJ, INDIVIDUALLY AS SURVIVING MOTHER OF HANNAH QUINN WESTALL AND AS THE REPRESENTATIVE OF THE ESTATE OF HANNAH WESTALL, AND THE STATUTORY BENEFICIARY J.B.M.;**

*Plaintiff*,

v.

**DAVID M. PERRY,**

*Defendants*.

Case No.  SA-21-CV-00281-JKP

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant David Perry's Motion for Summary Judgment. *ECF Nos. 54,61*. Plaintiffs responded. *ECF No. 57*. Upon consideration, the Motion for Summary Judgment is GRANTED.

### Undisputed Factual Background

Plaintiff, Marlo Ondrej, the parent of decedent Hannah Westall, brings suit individually and on behalf of the Estate of Hannah Westall and Westall's daughter ("the Westall Plaintiffs"). At the time relevant to this action, Defendant Sergeant David Perry was employed as a San Antonio Police Officer.

On March 20, 2019, Sgt. Perry responded to an emergency call reporting a woman walking down the street in close vicinity to a middle school with what appeared to be an "Uzi" in her waistband. The police dashcam reveals Sgt. Perry approached Westall as she was walking

through the parking lot of a shopping center located across a busy street from the middle school.[1] Westall was vaping. Sgt. Perry stopped his patrol vehicle a few feet in front of Westall and immediately exited the vehicle with his weapon drawn. The parties do not dispute Sgt. Perry commanded Westall to stop, and she stopped walking immediately. Westall then took a vape and raised her hands. Westall took a step forward while turning her body to reveal the weapon in her back waistband. From the dashcam video, it appears Westall speaks; however, because the video has no audio, it is not known what she says. The Westall Plaintiffs contend she says, "It's a toy. It isn't real." Westall then lowered her right hand toward the gun in her waistband. Immediately, Sgt. Perry fired five rounds which resulted in seven strikes. Westall died at the scene from her injuries. Later investigation revealed the gun in Westall's possession was a metal, handheld BB gun with an ammunition clip extended from the handle.

    The Westall Plaintiffs filed suit against the City of San Antonio ("the City") and Sgt. Perry. The City of San Antonio was dismissed from suit. Against Sgt. Perry, the Westall Plaintiffs assert a cause of action for use of excessive force that caused the death of Hannah Quinn Westall in violation of her rights under the Fourth, Eighth and Fourteenth Amendments of the U.S. Constitution, actionable pursuant to 42 U.S.C. § 1983. Sgt. Perry now files this Motion for Summary Judgment asserting the causes of action based upon violation of the Eighth and Fourteenth Amendments must be dismissed as a matter of law, and qualified immunity precludes liability from suit based upon violation of the Westall's Fourth Amendment right.

---

[1] Sgt. Perry's dashcam does not provide audio of the incident; his bodycam was activated after the shooting, and does not provide audio.

**Legal Standard**

1. **Summary Judgment Burden**

Under Federal Rule of Civil Procedure 56(a), courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "As to materiality, the substantive law will identify which facts are material" and a fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a dispute over a material fact qualifies as "genuine" within the meaning of Rule 56. *Id.* Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. There is no genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In determining whether to grant summary judgment, the courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Id.* Furthermore, the courts have "no duty to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *accord Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

2. **Summary Judgment Standard with Qualified Immunity Defense**

---

[2]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

Generally, the affirmative defense of qualified immunity is an immunity from suit, and shields a government official for actions within their discretionary authority when their conduct complies with clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Wallace v. County of Comal,* 400 F.3d 284, 289 (5th Cir. 2005). Determination of the applicability of the qualified immunity defense requires two inquiries: (1) whether the official's conduct violated a clearly established constitutional right or statute, and (2) whether the official's conduct was objectively unreasonable under clearly established law existing at the time of the incident of which a reasonable person would have known. *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022), cert. denied, 143 S. Ct. 1783 (2023); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). If the Court answers both questions in the affirmative, the government official is not shielded from liability based upon qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232, (2009); *Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022). A court need not analyze these prongs sequentially because if either is not satisfied, the government official is entitled to qualified immunity. *Buehler*, 27 F.4th at 981–82. Still, the Fifth Circuit provides guidance that although a district court may "'leapfrog' the first prong and resolve cases solely on the basis that defendants' conduct—even if unlawful—did not violate clearly established law, 'we think it better to address both steps in order to provide clarity and guidance for officers and courts.'" *Id*. at 981–82.

Although not presumed, when a defendant asserts the qualified-immunity affirmative defense, the burden of proving the affirmative of both prongs falls upon the plaintiff. *Buehler*, 27 F.4th at 981–82; *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Consequently, when a government official asserts qualified immunity upon summary judgment, this assertion shifts the typical summary judgment bur-

den of proof. *Brown v. Callahan*, 623 F.3d at 253; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Instead, the summary-judgment initial burden falls on the plaintiff to demonstrate the inapplicability of qualified immunity by establishing a genuine dispute of material fact on both prongs of the inquiry. *Brown v. Callahan*, 623 F.3d at 252-53; *Poole*, 691 F.3d at 627-28. All inferences are still drawn in the plaintiff's favor. *Brown v. Callahan*, 623 F.3d at 253.

### a) Statutory or Constitutional Violation

With regard to the first inquiry, the plaintiff must show there is a genuine dispute of material fact whether the defendant violated a constitutional right, that is, a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. *Freeman v. Gore,* 483 F.3d 404, 410 (5th Cir. 2007). Because the summary-judgment initial burden falls on the plaintiff to demonstrate a genuine dispute of material fact on both prongs of the inquiry, if the Court determines there is not a genuine dispute whether the alleged conduct violated a constitutional right, the official is entitled to qualified immunity upon summary judgment. *Buehler*, 27 F.4th at 981–82; *Poole*, 691 F.3d at 627-28; *Shepard v. Hansford Cnty.*, 110 F. Supp. 3d 696, 707–08 (N.D. Tex. 2015).[3]

### b) Whether Right is Clearly Established

With regard to the second inquiry, the plaintiff "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law." *Tucker v. City of Shreveport*, 998 F.3d 165, 172–73 (5th Cir. 2021), cert. denied sub

---

[3] The Court does recognize that some well-cited caselaw states the inquiry differently as: "the threshold 'constitutional violation question' [is] whether . . . the officer's alleged conduct violated a constitutional right . . . . If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because *there is no constitutional violation for which the government official would need qualified immunity*." *Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 410 (5th Cir. 2009)(emphasis added).

nom. *Tucker v. City of Shreveport, Louisiana*, 142 S. Ct. 419 (2021); *Gates v. Texas De"t of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). The plaintiff has the burden to point out clearly established law, and the Court asks whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation. *See Freeman,* 483 F.3d at 411; *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019).

To meet this burden, the plaintiff need not identify a specific case, but, a body of relevant caselaw in which an officer acting under similar circumstances was held to have violated the Constitution. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020)(quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018)). While there need not be a case directly on point, the unlawfulness (unconstitionality) of the challenged conduct must be beyond debate. *Id*. This leaves the rare possibility that, in an obvious case, analogous caselaw is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Id*.

## Discussion

### I.     Eighth Amendment

The Westall Plaintiffs assert a cause of action for violation of Westall's right to be free from cruel and unusual punishment guaranteed under the Eighth Amendment.

The protection of the Eighth Amendment against cruel and unusual punishment is limited to convicted prisoners and does not apply to pretrial detainees. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). The undisputed facts and evidence presented demonstrate Westall was a pretrial detainee at the time of the incident in question, not a convicted prisoner. Consequently, the Westall Plaintiffs cannot establish a genuine dispute of material fact whether Sgt. Perry violated

Westall's constitutional right protected by the Eighth Amendment. For this reason, Sgt. Perry is entitled to summary judgment on this cause of action.

## II.     Fourteenth Amendment

The Westall Plaintiffs assert a cause of action for violation of Westall's rights not to be deprived of life, liberty or property without the due process of law and to be accorded equal protection of the laws guaranteed under the Fourteenth Amendment.

As a matter of law, a plaintiff does not have a due process cause of action under the Fourteenth Amendment if the same claim is susceptible to analysis under another specific constitutional source. *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). When "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment .... , which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Westall Plaintiffs also allege Sgt. Perry's actions which form the basis of this cause of action also violated Westall's constitutional right to be free from excessive force guaranteed by the Fourth Amendment. The Fourth Amendment is a more specific constitutional source for the Westall Plaintiffs' cause. *See id*. Therefore, the Westall Plaintiffs cannot establish a genuine dispute of material fact whether Sgt. Perry violated Westall's constitutional right protected by the Fourteenth Amendment. For this reason, Sgt. Perry is entitled to summary judgment on this cause of action.

To the extent the Westall Plaintiffs attempt to assert Westall was denied equal protection under the Fourteenth Amendment, this cause of action also must be dismissed by summary judgment as a matter of law. To maintain an equal-protection cause of action, an individual must

allege and prove he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent. *Id.*; *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). Discriminatory purpose in an equal protection context implies the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). A plaintiff cannot rest only on his personal belief that discrimination played a part in the conduct. *Id*. Vague and conclusory allegations of discrimination fail to state an equal protection claim. *Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (1990).

The Westall Plaintiffs do not plead any facts alleging Westall was treated differently than similarly situated individuals and this unequal treatment stemmed from discriminatory intent. Additionally, the Westall Plaintiffs do not present evidence in response to the Motion for Summary Judgment to raise a genuine dispute whether Sgt. Perry acted with discriminatory intent or that Westall was treated any differently than someone who was similarly situated. Because the Westall Plaintiffs present no evidence to support such a cause, Sgt. Perry is entitled to summary judgment on any potential equal protection cause of action.

### III.     Fourth Amendment

Sgt. Perry asserts immunity from the Westall Plaintiffs' Fourth Amendment cause of action based upon qualified immunity. Consequently, the burden falls upon the Westall Plaintiffs to raise a genuine dispute of material fact on both inquiries of the qualified immunity defense.

The Westall Plaintiffs assert two different theories for Fourth Amendment violations. First, the Westall Plaintiffs allege it is indisputable Westall moved slowly as she disclosed to Sgt. Perry the weapon in her back waistband. While the sound of the dashcam is not available, the Westall Plaintiffs contend it is indisputable Westall stated, "It is a toy. It isn't real." Westall

turned to reveal the weapon was, in fact, a toy and reached to show this to Sgt. Perry. Just before Sgt. Perry opened fire, Westall screamed, "WAIT!" The Westall Plaintiffs contend these facts, alone, reveal a violation of her Fourth Amendment constitutional right and constitute an objectively unreasonable use of excessive force. For the second theory of liability, the Westall Plaintiffs assert Sgt. Perry's fourth and fifth shots were unreasonable excessive uses of force because Westall was already on the ground and rendered helpless and unarmed.

As summary judgment proof of these arguments and theories of recovery, the Westall Plaintiffs offer Sgt. Perry's bodycam video, affidavit and deposition, as well as the dashcam video of the incident from Sgt. Perry's duty vehicle and the dashcam video of a passerby which does not reveal audio or visual of the incident, but does reveal audio of the five gunshots fired.

**1. First Qualified-Immunity Inquiry: Constitutional Violation**

When a plaintiff alleges the use of excessive force in the context of an arrest or investigatory stop of a free citizen, "it is most properly characterized as one invoking the protections of the Fourth Amendment ...." *Graham v. Connor*, 490 U.S. 386, 394 (1989). At the first inquiry of the qualified immunity analysis, a plaintiff must present a genuine dispute of material fact whether the official violated their Fourth Amendment right by using excessive force. To demonstrate constitutional injury due to the use of excessive force, a plaintiff must show: (1) the plaintiff suffered a physical injury (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). Consequently, to satisfy her summary-judgment burden on the first qualified immunity inquiry, a plaintiff must raise a genuine dispute of material fact on each element to raise a genuine dispute whether she suffered a constitutional injury.

Fourth Amendment excessive-force jurisprudence recognizes an official's arrest or investigatory stop necessarily carries with it the discretion to use some degree of physical coercion or threat thereof to effect the stop or arrest. *Tucker*, 998 F.3d at 171 (citing *Graham*, 490 U.S. at 396). If the official's conduct was lawful under the circumstances, the plaintiff does not suffer a constitutional injury even if the conduct resulted in significant injury or death. Consequently, this inquiry necessarily involves determination whether the force used was reasonable under the circumstances. *Graham* 490 U.S. at 396; *Frank et al v. Parnell et al*, 2023 WL 5814938, at *3 (5th Cir. Sept. 8, 2023). Although a reasonableness inquiry usually falls within the province of a jury, when applicable to a qualified-immunity analysis within an excessive-force claim, the reasonableness inquiry is objective and decided as a matter of law. *Id*.

"Determining whether the force used to effect a particular seizure is "reasonable" for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake. *Graham* 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Tucker*, 998 F.3d at 171. Thus, whether the force used was unlawfully excessive, that is, objectively unreasonable, depends on the facts and circumstances of each particular case. *Frank*, 2023 WL 5814938, at *3; *Harmon v. City of Arlington*, 16 F.4th 1159, 1164 (5th Cir. 2021). In this context, the question is whether the officer's actions are objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham* 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Tucker*, 998 F.3d at 171. Although all disputed facts are construed in favor of the non-movant in the summary judgment context, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham* 490 U.S. at 396; *Griggs v. Brewer,* 841 F.3d 308, 313–14 (5th Cir. 2016).

To view an officer's actions within the totality of the circumstances to determine objective reasonableness, courts utilize factors established in *Graham*, to the extent they apply: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Frank*, 2023 WL 5814938, at *3; *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 728-31 (5th Cir. 2018). With regard to whether the suspect poses an immediate threat, a court should consider "the speed with which an officer resorts to force where officers deliberately, and rapidly, eschew lesser responses when such means are plainly available and obviously recommended by the situation." *Crane v. City of Arlington*, 50 F.4th 453, 464 (5th Cir. 2022) (citing *Harmon*, 16 F.4th at 1165). "The court can also consider 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Frank*, 2023 WL 5814938, at *3 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

In a case involving the use of deadly force, the objective reasonableness balancing test is, again, modified. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018); *Flores v. City of Palacios*, 381 F.3d 391, 398-99 (5th Cir. 2004)(quoting *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). While all factors are relevant, the court's focus is primarily on the second Graham factor: whether the suspect poses an immediate threat to the safety of the officer or others. *Harmon*, 16 F.4th at 1163; *Romero*, 888 F.3d at 176. In this instance, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Harmon*, 16 F.4th at

11

1163; *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). An officer's conduct is objectively reasonable if "'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Harmon*, 16 F.4th at 1163; *Romero v. City of Grapevine, Tex.*, 888 F.3d at 176 (quoting *Garner*, 471 U.S. at 11).

### a. Application of Graham Factors

Sgt. Perry's use of force resulted in loss of life. For this reason, the Court's focus and weight of analysis lie on the second *Graham* factor: whether Westall posed an immediate threat of serious physical harm to Sgt. Perry or others. In this situation, the objectively-reasonable analysis must embody allowance for the fact that police officers must make split-second judgments in circumstances that are tense, uncertain and rapidly evolving. *See Graham*, 490 U.S. at 396-97. When making the determination as to whether or not the officer had probable cause to believe a suspect posed a threat of serious harm to either the officer or others, the Court again must consider the totality of the circumstances as perceived by a reasonable officer on the scene. *See id.*; *Hatcher v. Bement*, 676 F.Appx. 238, 243 (5th Cir. 2017).

When the evidence includes sufficiently viewable and reliable video of the incident at issue, instead of viewing the evidence in the light most favorable to the plaintiff's version, the Court must view the facts in the light depicted by the recordings of the incident. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). The Court is not required to accept the plaintiff's version of the factual allegations that are blatantly contradicted by video evidence. *Buehler*, 27 F.4th at 979–80. Here, the dashcam video is sufficiently reviewable and reliable. Therefore, the Court will rely upon the dashcam footage to the extent it applies and will rely upon the Westall Plaintiffs' version of the facts that fall outside the purview of the dashcam video.

### i. Threat-of-harm

This factor predominates this Court's analysis and weighs in favor of Sgt. Perry. *See Harmon*, 16 F.4th at 1163. Westall was reported to be walking close to a school with a gun in her waistbelt. The stop confirmed this reported dangerous situation to be true. In addition, Westall was stopped in a public parking lot of a shopping center in close vicinity to a middle school while cars drove close by. While stopped with arms raised, Westall turned to reveal she had a gun in her waistbelt, and then immediately made a motion to reach for the gun without being instructed to do so.

Even accepting as true that Westall had no malintent in reaching for the gun and Westall did state, "it is a toy", Sgt. Perry was not in a position to believe this or otherwise know this to be true. Sgt. Perry was not obligated to accept the truth of Westall's words, and Westall reached for a known weapon without being told to do so. Additionally, it is clear from Sgt. Perry's dashcam footage that he had no time to attempt to deescalate the situation when Westall revealed the gun and then made a clear, deliberate and indisputable effort to reach for it. Thus, if Westall's intent was to show Sgt. Perry the gun was broken or was a toy BB gun, this fact was no available to him at the time because she moved to get the gun and reached for a known weapon without being told to do so. The facts available to Sgt. Perry provided probable cause to use deadly force.

Consequently, under the undisputed facts displayed in the dashcam video and viewed in the light most favorable to the Westall Plaintiffs, even though small in stature and even if she stated the weapon was a toy, Westall posed an immediate threat of serious physical harm to Sgt. Perry and the public by reaching for the gun in her back waistband. A jury could not conclude that a reasonable officer would have been keenly aware that this level of force should not have been used under these facts.

### ii.     Other Graham Factors

Under these facts, the Graham factors of severity of the crime and attempt to evade arrest are not relevant, and therefore, will not be analyzed.

### b.     Alternative Argument: Parsing the Fourth and Fifth shots

The Westall Plaintiffs contend the autopsy evidence and Sgt. Perry's admission in his deposition reveal the first through third shots incapacitated Westall and caused her to fall to the ground, and the fourth and fifth shots which struck her head while on the ground proved fatal. The Westall Plaintiffs allege that after the third shot Sgt. Perry should have drawn the definitive conclusion that Westall was no longer a danger. In making this argument, the Westall Plaintiffs argue the shots must be parsed into those necessary to dispel the threat and those that were fatal.

Review of the audio on the passerby dashcam video is helpful to analyze this theory of liability. The audio reveals Sgt. Perry fired, in rapid succession, five uninterrupted shots in under two seconds. Sgt. Perry never hesitated or disengaged and then reengaged in shooting. *ECF No. 54*, Ex. F. Sgt. Perry's dashcam video reveals the same definite and irrefutable conclusion. *Id.*, Ex. C.

This summary judgment evidence dispels the Westall Plaintiffs' theory and any cited legal support. With the rapid succession of the five shots, Sgt. Perry had no way of knowing whether Westall was incapacitated or the degree of her incapacitation. The Westall Plaintiffs do not present any summary judgment evidence to raise a genuine dispute of material fact whether, from the time between the third shot and the fourth and/or fifth fatal shots, Westall was completely incapacitated and no longer a danger or that Sgt. Perry had reason or opportunity to stop firing. Nothing in either dashcam footage and the audio reveals Sgt. Perry hesitated between the third and fourth shots or had reason to. Further, the Westall Plaintiffs do not present any support-

ing caselaw holding any reasonable officer could have determined Westall was incapacitated or could not harm anyone within that short time.

Further, persuasive caselaw does hold that this argument attempting to splice the reasonableness inquiry by parsing the nonfatal shots from the fatal ones overlooks the critical inquiry, which focuses on whether a reasonable officer in Sgt. Perry's position reasonably perceived an imminent threat of bodily harm. *See Glover v. Pailet*, No. CIV.A. 13-2984, 2015 WL 2250092, at *11-12 (E.D. La. May 13, 2015). Similar to the argument here, the Plaintiffs in *Glover* argued the deceased could no longer adequately provoke the officer once he had fallen down. However, as here, the plaintiffs presented no evidence that raised a genuine dispute as to a material fact whether the officer's resort to deadly force was unreasonable. *Id*. For this reason, the Glover Court held it could only "resolve factual controversies in favor of the nonmoving party," when "there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id*. at *12. The Court correctly concluded that the Plaintiffs "simply question whether the fatal shot was necessary." *Id*. However, the issue the Court must answer is whether under the clearly-established law in effect at the time, no reasonable officer would have concluded Westall posed an immediate threat of serious physical harm to Sgt. Perry or the public by reaching for the gun in her back waistband. *See id*.

The undisputed circumstances and evidence presented confirm Sgt. Perry's reasonable belief that Westall posed an immediate threat of harm to himself and to the public, and that deadly force was necessary. For this reason, based upon this argument, the Westall Plaintiffs fail to raise a genuine dispute of material fact to overcome Sgt. Perry's defense of qualified immunity.

15

   **c.**  **Conclusion**

The Court concludes the evidence presented and viewed in the light most favorable to the Westall Plaintiffs and the bodycam video and passerby audio evidence do not raise a genuine dispute of material fact whether the use of force that was clearly excessive to the need. The Westall Plaintiffs fail to raise a genuine dispute whether Sgt. Perry's use of force in this situation was objectively unreasonable. The Court concludes the Westall Plaintiffs fail to satisfy their summary judgment burden with regard to the first inquiry, and Sgt. Perry's conduct was lawful for this reason, and he did not violate Westall's Fourth Amendment right. For this reason, Sgt. Perry is entitled to qualified immunity as a matter of law, and summary judgment can be granted on this basis. Following the Fifth Circuit's preference, however, the Court will address the second qualified-immunity inquiry as well.

   **2. Second Qualified Immunity Inquiry: Clearly Established Law**

In an excessive-force case, the second inquiry of the qualified immunity analysis, itself encompasses two separate inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tucker*, 998 F.3d at 172 (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) and *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Tucker*, 998 F.3d at 172 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "'Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'" *Tucker*, 998 F.3d at 172-173 (quoting *Brosseau*

*v. Haugen*, 543 U.S. 194, 198 (2004)). Even if genuine disputes of material fact exist concerning the Fourth Amendment violation (first inquiry), Sgt. Perry is entitled to qualified immunity unless his actions were objectively unreasonable in light of clearly established law at the time of the shooting. The critical question when ascertaining the clearly established law is "whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Id*. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021)

With qualified immunity, the question whether there existed clearly established law is *not* to be determined with general caselaw. *Tucker*, 998 F.3d at 173 (citing *Mullenix v. Luna*, 577 U.S. 7, 12–14 (2015)). "[Q]ualified immunity protects actions in the 'hazy border between excessive and acceptable force.'" *Mullenix*, 577 U.S. at 18 (quoting *Brosseau,* 543 U.S. at 201 and *Saucier,* 533 U.S. at 206). Sufficiently specific "[p]recedent involving similar facts can help move a case beyond the otherwise hazy border between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Thus, qualified immunity "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau*, 543 U.S. at 198.

"The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *District of Columbia v. Wesby,* 583 U.S. 48, 63-64. Under this guidance, "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the defendant officer] did here, or *every* reasonable officer faced with the same facts would *not* have

17

[acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019), *cert. denied,* 41 S. Ct. 116 (2020); *Tucker*, 998 F.3d at 174–75. Thus, to defeat summary judgment within the second inquiry of the qualified immunity analysis, the Westall Plaintiffs must point to specific caselaw holding every reasonable officer acting under similar circumstances would not have acted as Sgt. Perry did.

The Westall Plaintiffs present no cases to support this inquiry, relying instead solely upon the first qualified-immunity inquiry. To the extent the cases presented to establish the fourth and fifth shots were an excessive use of force can be applied to satisfy the summary judgment burden in this second inquiry, the Court will review the Westall Plaintiffs' argument in this light. In this regard, the Westall Plaintiffs present three cases: *Roque v. Harvel*, 993 F.3d 325, 336 (5th Cir. 2021), *Lytle v. Bexar Cnty.*, 560 F.3d. 404, 413 (5th Cir. 2009), and *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

Citing *Lytle* and *Plumhoff*, the *Roque* Court denied application of qualified immunity on summary judgment, holding, "it was clearly established that after incapacitating a suspect who posed a threat, an officer cannot continue using deadly force." *Roque*, 993 F.3d at 336. Even accepting the Westall Plaintiffs' theory that Sgt. Perry should have stopped firing after the third shot, the facts in *Roque*, however, are clearly distinguishable from those here, and therefore, this case does not support the Westall Plaintiffs' argument. In *Roque*, the suspect was reported to have a weapon, threatening to kill himself, and walking up and down the street in front of his home. *Id*. at 330. When officers responded to the scene, the suspect pulled out the gun, which was later determined to be a BB gun, and pointed it at his head, threatening to kill himself. *Id*. An officer yelled, for the first time, "Put the gun down!" Video evidence shows the suspect, then turned around to face the officers with the gun pointed in the air. *Id*. In the split second between

the officer's command to put the gun down and the suspect turning his body toward the officers with his arm and the gun in the air, an officer shot the suspect from a distance with a single shot from a semi-automatic rifle. *Id.* The suspect immediately doubled over, dropped the gun, and stumbled from the sidewalk toward the street, away from his mother at his home and the officers. *Id.* About two seconds after the first shot, while the suspect was stumbling into the street, an officer fired another shot that missed the suspect, who continued floundering into the street. *Id.* Another two seconds later, the officer took a final and fatal shot. *Id.*

As the Court previously determined, there is no genuine dispute of material fact that Sgt. Perry fired five shots in rapid succession, with the fourth and/or fifth shots proving fatal. However, under the facts in this case, due to the rapid fire and Westall's simultaneous fall, Sgt. Perry had no time to pause or determine that she was incapacitated. There was no pause, as in *Roque*, to make this determination, nor opportunity to pause. Thus, the Court's holding in *Roque* cannot be applied to this case to make the determination under the second inquiry of the qualified immunity analysis, that an officer acting in similar ways under similar circumstances violated a suspect's right to be free from excessive force.

For the same reason, the *Lytle* and *Plumhoff* cases do not satisfy this summary judgment burden. *Plumhoff* is clearly distinguishable, holding the officers "did not violate the suspect's Fourth Amendment rights when they shot 15 times into his vehicle, ultimately killing him, in order to stop a dangerous high-speed chase, [and] no clearly established law precluded their conduct at time in question, and, thus, they were entitled to qualified immunity." *Plumhoff* , 572 U.S. 778-79. Here, Westall was not attempting to flee, nor were the surrounding circumstances sufficiently similar.

19

The *Lytle* Court held the law clearly established that generally, and more specifically in the context of shooting a fleeing suspect, "it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Lytle*, 560 F.3d at 417–18. Here, it is indisputable that Westall was not fleeing at the time of the use of force and was reaching for the known weapon. For this reason, the clearly established law precluding the defense of qualified immunity in *Lytle* does not apply under the undisputed facts presented in this case.

The Westall Plaintiffs fail to cite to any legal authority to give fair warning to Sgt. Perry or a reasonable officer in his position, that his conduct would have been a violation of clearly established law. Consequently, the Westall Plaintiffs fail to satisfy their summary judgment burden on this second inquiry of the qualified immunity defense, and the Court concludes Sgt. Perry is entitled to qualified immunity for this reason.

## CONCLUSION

For the reasons stated, with regard to the first inquiry and the second inquiry of the asserted qualified immunity affirmative defense, the Westall Plaintiffs fail to satisfy their summary judgment burden to raise a genuine dispute of material fact whether qualified immunity applies. Consequently, Sgt. Perry's Motion for Summary Judgment based upon qualified immunity is GRANTED.

It is so ORDERED.
SIGNED this 2nd day of October, 2023.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE